IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS LEE BROWN, JR.,  :
:
       Petitioner  :
:
    v.  :  CIVIL NO. 4:CV-13-1495
:
SUPT. DANIEL BURNS,  :  (Judge Brann)
:
       Respondent  :

## MEMORANDUM

November 18, 2015

**Background**

    Thomas Lee Brown, Jr., an inmate presently confined at the Forest State

Correctional Institution, Marienville, Pennsylvania (SCI-Forest), filed this pro se

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Named as

Respondent is SCI-Forest Superintendent Daniel Burns.

    Petitioner states that on April 20, 2007 he was convicted of first degree

murder and retaliation against witness/victim Lamont Nelson following a jury trial

in the Court of Common Pleas of York County, Pennsylvania.[1]  During trial,

Brown argued that he was not the assailant.  He was subsequently sentenced on

---

    [1]   According to the Commonwealth, Nelson was the chief witness against
Petitioner in a pending drug related criminal prosecution.

May 29, 2007 to a mandatory term of life imprisonment without parole.[2]

Brown acknowledges that his conviction and sentence were affirmed on October 6, 2008 following a counseled direct appeal to the Superior Court of Pennsylvania.  See  Commonwealth v. Brown, 964 A. 2d 429 (Pa. Super 2008). The direct appeal asserted that the trial court erred by:  (1)  denying a motion to suppress the photo identification and any subsequent identification of the defendant by witness James Sanders;[3] (2) admitting autopsy photographs; (3) denying the defendant's motion in limine to exclude the testimony of Commonwealth witness Paul Summerbell; (4) giving a jury instruction on consciousness of guilt relating to the alleged alteration of the defendant's appearance during a physical lineup;[4] (5) allowing hearsay testimony by Summerbell; (6) permitting testimony regarding the collateral Smokey Bones restaurant case; (7) not excluding the testimony of the Commonwealth's gunshot residue expert and (8) there was insufficient evidence to support the verdict.  See

---

[2]  The jury deadlocked on whether to impose the death penalty.

[3]  After hearing gunshots, Sanders allegedly saw Brown running from the area where Nelson was shot and shortly thereafter identified the Petitioner from a photo array.  Although Nelson was unable to pick Brown out of a physical lineup, the witness later identified Petitioner in court.

[4]  The Commonwealth presented evidence that before the in person line up identification involving witness Sanders, Brown purportedly encouraged another person in the line up to wear his eyeglasses in order to confuse Sanders.

Doc. 1, p. 12.[5]

Thereafter, Petitioner's request for allowance of appeal was denied on February 27, 2009 by the Supreme Court of Pennsylvania. See Commonwealth v. Brown, 966 A.2d 570 (Pa. 2009). Petitioner indicates that with the exception of his insufficient evidence argument all of the grounds brought before the Superior Court were presented before the Pennsylvania Supreme Court. See id. at p. 13.

Petitioner also sought relief via an action pursuant to Pennsylvania's Post Conviction Relief Act (PCRA).[6] Brown's PCRA petition alleged that trial counsel was ineffective for failing to: (1) call Richard Saferstein, Ph.D. as a rebuttal gunshot residue expert; (2) request a mistrial upon notification that the trial court judge had contact with a juror during a trial break; (3) appeal the trial court's ruling preventing disclosure of the names of persons arrested based on evidence disclosed by the decedent while acting as a confidential informant; and (4) neglecting to investigate the identify of the individual who had a physical altercation with the decedent the day before his death. See id. at pp. 13-14.

---

[5] See also Doc. 11-2, pp. 183-184.

[6] See 42 Pa. Cons. Stat. Ann. § 9541 et seq. The PCRA "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

Following appointment of counsel and an evidentiary hearing, the sentencing court denied relief on December 29, 2011.

Brown appealed that decision to the Superior Court of Pennsylvania which affirmed the denial of PCRA relief by decision dated August 15 , 2012. Brown then filed a petition for allowance of appeal to the Pennsylvania Supreme Court which was denied on February 14, 2013.

Ground One of Petitioner's pending action reasserts the same PCRA ineffective assistance arguments with exception of Brown's contention that counsel was deficient for not discovering the identify of the individual who had a physical altercation with the decedent the day before his death. See id. at p. 14.

Ground Two sets forth the following direct appeal arguments that the trial court erred by: (1) denying a motion to suppress the photo identification by witness Sanders; (2) admitting autopsy photographs; (3) denying defendant's motion in limine to exclude Summerbell's testimony; (4) giving a jury instruction on consciousness of guilt; and (5) allowing hearsay testimony by Summerbell. Also included in Ground Two is argument (6) which asserts that the trial court improperly denied a request by the jury to be provided with a book on gun shot residue. Ground Three maintains that there was insufficient evidence to support the convictions.

Respondent concedes that this matter is timely filed.  <u>See</u> Doc. 11, ¶ 13. However, the response asserts that the petition is nonetheless subject to dismissal for failure to exhaust state remedies with respect to his procedurally defaulted claims (Ground Two (6)) that the trial court acted improperly by preventing the jury from being provided with a book on gunshot residue and insufficient evidence (Ground Three).  The Respondent also contends that the admission of the autopsy photos was proper and the trial court's decision to allow Summerbell's testimony was not an abuse of discretion.  Furthermore, the response contends that there is no basis for habeas corpus relief with respect to the remaining allegations of ineffective assistance of counsel and trial court error.

## **<u>Discussion</u>**

It is undisputed that Petitioner was charged with first degree murder arising from the shooting death of Lamont Nelson during the early morning of April 7, 2006.  Nelson was a confidential informant and the Commonwealth argued that Brown had a motive to kill the victim because Nelson was the chief witness against him in a pending state criminal prosecution.

An eyewitness, James Sanders, testified that he heard gunshots and then saw Petitioner running away from the area where the shooting took place.  Sanders identified Brown from a photographic lineup approximately one hour after the

incident.  The Commonwealth also presented testimony that during a  second physical lineup conducted on June 9, 2007, the Petitioner encouraged another man in the lineup (Summerbell) to wear Brown's glasses in order to confuse Sanders. In addition, the Commonwealth presented expert testimony which linked Brown to the murder through gunshot residue analysis.

## I.      Procedural Default

Respondent maintains that Brown did not properly exhaust his available state court remedies with respect to his claim that the trial court acted improperly by preventing the jury from being provided with a book on gunshot residue that was used as evidence during the trial.  See Doc. 11, p. 14.  Specifically, Respondent argues that although Petitioner raised claims regarding the gunshot residue expert testimony given at trial, he "never raised an issue regarding the jury being allowed to see a book that the expert used."  See id. at p. 15.  Furthermore, Respondent argues that said claim has been procedurally defaulted in state court and should not be entertained by this Court

In a similar argument, Respondent contends that Ground Three is also procedurally defaulted and subject to dismissal because the Superior Court concluded that the insufficiency of evidence argument was waived on direct appeal.  See Doc. 11, p. 15.

Title 28 United States Code Section 2254(b)(1) provides that an application for a writ of habeas corpus filed on behalf of a person in custody pursuant to the judgment of a State court cannot be granted unless the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available state corrective process; or there are existing circumstances which render the state process ineffective.[7]  The exhaustion requirement is not a mere formality.  It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004).

The United States Court of Appeals for the Third Circuit has stated that "[U]nder 28 U.S.C. § 2254(c), such a petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001).

"A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" Woodford v. Ngo,

_____

[7]  However, a Section 2254 petition may be denied on the merits notwithstanding the failure of a petitioner to exhaust available state court remedies.

548 U.S. 81, 126 S.Ct. 2378, 2386-87 (2006) (internal citations omitted);

O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)(while exhaustion does not

require state prisoners to invoke extraordinary remedies, the state courts must be

afforded one full opportunity to resolve any constitutional issues via completion of

the State's established appellate review process).  The United States Supreme

Court in O'Sullivan explained, that state prisoners must "file petitions for

discretionary review when that review is part of the ordinary appellate review

procedure in the State." Id. at 847.  Our Supreme Court added that, in determining

whether a state prisoner has preserved an issue for presentation in a federal habeas

petition, it must be determined not only whether a prisoner has exhausted his state

remedies, but also whether he has properly exhausted those remedies, i.e., whether

he has fairly presented his claims to the state courts.  See id. at 848.

Fair presentation requires that the "substantial equivalent" of both the legal

theory and the facts supporting the federal claim are submitted to the state courts

and the same method of legal analysis applied in the federal courts must be

available to the state courts.  Evans v. Court of Common Pleas, 959 F. 2d 1227,

1230 (3d Cir. 1992); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

Moreover, to satisfy exhaustion, the state court must be put on notice that a federal

claim is being asserted.  Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).  The

exhaustion requirement is satisfied if the petitioner's claims are presented through a collateral proceeding, such as a petition under the PCRA, and it is not necessary to present federal claims to state courts both on direct appeal and in a PCRA proceeding. Evans, 959 F.2d at 1230.

When a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility. See Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir. 1993). Such a claim is procedurally defaulted, not unexhausted. A federal habeas court cannot review a procedurally defaulted claim, "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Beard v. Kindle, 558 U.S. 53, 55 (2009). Procedural default can only be excused if a petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

As previously discussed, Ground Two (6) of Brown's Petition raises a claim that the trial court acted improperly by preventing the jury from being provided with a book on gunshot residue that was used as evidence during the trial. Ground Three maintains that the evidence was insufficient to sustain a

finding of guilt.

In his Petition, Brown acknowledges that the claims listed at "Ground Two (6) Three" were not previously presented due to the ineffective assistance of counsel on direct appeal. <u>See</u> Doc. 1, ¶ 13.  Accordingly, it is undisputed that Petitioner's claim that the trial court acted improperly by preventing the jury from being provided with a book on gunshot residue that was used as evidence during the trial as well as his insufficient evidence argument are both unexhausted.  It is equally apparent that given the passage of time and the fact that Petitioner has already pursued both a direct appeal and a PCRA action, those arguments have been procedurally defaulted in state court.

Given Petitioner's failure to offer any viable explanation as to why he did not properly present Ground Two (6) and Ground Three in either his direct appeal or PCRA action, he has failed to establish cause and resulting prejudice for his procedurally defaulted argument.  It is especially noted that while Brown contends that his trial counsel, who also represented him on direct appeal, erred by not including those assertions, there is no viable explanation as to why they were not then included in Brown's PCRA action filed <u>pro se</u> and thereafter when he was represented by new counsel.  There is also no basis for a finding that a fundamental miscarriage of justice would result if said claims were not addressed

on their merits.  The Respondent's request for dismissal of Ground Two (6) and Ground Three will be granted.

## II.   Trial Court Error

### A.  Standard of Review

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).   Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).[8]  See generally, Knowles v. Mirzayance, 556 U.S. 111, 114, ( 2009); Gattis v. Snyder,

---

[8]   Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

278 F.3d 222, 234 (3d Cir. 2002); <u>Moore v. Morton</u>, 255 F.3d 95, 104-05 (3d Cir.

2001).  The United States Supreme Court has held that the "contrary to" and

"unreasonable application" clauses of § 2254(d)(1) have independent meaning.

<u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000)  As explained in <u>Bell</u>, 535 U.S.

at 694:

> A federal habeas court may issue the writ under the
> 'contrary to' clause if the state court applies a rule
> different from the governing law set forth in our cases,
> or if it decides a case differently than we have done on a
> set of materially indistinguishable facts. . . . The court
> may grant relief under the 'unreasonable application'
> clause if the state court correctly identifies the governing
> legal principle from our decisions but unreasonably
> applies it to the facts of the particular case. . . . The focus
> of the latter inquiry is on whether the state court's
> application of clearly established federal law is
> objectively unreasonable . . . .

Furthermore, resolution of factual issues by the state courts are presumed to be

correct unless the petitioner shows by clear and convincing evidence that they are

not.  28 U.S.C. § 2254(e) (1).

In summary, the appropriate inquiry for federal district courts in reviewing

the merits of Section 2254 petitions is whether the state court decisions applied a

rule different from the governing law set forth in United States Supreme Court

cases, decided the case before them differently than the Supreme Court has done

on a set of materially indistinguishable facts, or unreasonably applied Supreme

Court governing principles to the facts of the particular case.  See Keller v. Larkins, 251 F.3d 408, 417-18 (3d Cir. 2001) (a district court entertaining a § 2254 action must first address whether the state court decision was contrary to Supreme Court precedent); Martini v. Hendricks, 188 F. Supp.2d 505, 510 (D. N.J. 2002) (a § 2254 applicant must show that the state court decision was based on an unreasonable determination of facts in light of evidence presented in the state court proceeding).  Findings of fact by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  See 28 U.S.C. § 2254(e)(1).

### B.   Sanders' Identification

James Sanders testified that he was walking his dog in the neighborhood where the victim was shot and killed.  Sanders allegedly identified Petitioner as the person he saw running from the area where he heard gunshots.  Petitioner maintains that the trial court erred by denying a motion to suppress Sanders' identification of Brown by photograph array and all subsequent identifications made by Commonwealth witness Sanders.[9]  See  Doc. 1, p. 14.

---

[9]   Since Sanders testified at trial the Petitioner was clearly provided with an opportunity to confront this witness as provided by the Sixth Amendment.

13

Respondent contends that the claims pertaining to those identifications are subject to dismissal because challenges to evidentiary rulings allege violations of the Fourth Amendment which are not a basis for federal habeas corpus relief under Stone v. Powell, 428 U.S. 465, 494 (1976) where a petitioner had full and fair opportunity to litigate the claim in state court.  See  Doc. 11, p. 11.

As a general rule, federal habeas corpus review is not available to adjudge the correctness of a state court evidentiary ruling.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); Lupkovich v. Cathel, Civil No. 04-5399, 2006 WL 3313975, at *4 (D. N.J., Nov. 14, 2006) ("Because the trial court's ruling limiting the cross-examination of Chester Anderson regarding his reputation for violence presents a question of state evidentiary law, it is not cognizable under § 2254.") In short, evidentiary rulings are matters of state law, and are not within the province of a federal habeas corpus court.  See King v. Kerestes, Civil No. 09-1749, 2009 WL 5178805, at *3 (E.D. Pa., Dec. 21, 2009).  It is only where an evidentiary ruling "so infuse[s] the trial with unfairness as to deny due process of law," Lisenba v. People, 314 U.S. 219, 228 (1941), that federal habeas corpus review may exist.

It is equally well settled that "... a state prisoner may not be granted federal habeas corpus relief on the ground that evidence seized in an unconstitutional

search or seizure was introduced at his trial," if the state has already provided an "opportunity for full and fair litigation" of his Fourth Amendment claim. Stone, 428 U.S. 465, 494; Deputy v. Taylor, 19 F.3d 1485, 1491 (3d Cir.), cert denied, 512 U.S. 1230 (1994). Stone precludes a habeas petitioner from raising a Fourth Amendment claim if he has been afforded a full and fair opportunity to litigate that claim in state court. Gilmore v. Marks, 799 F.2d 51, 54 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987).

The record of this action as summarized above clearly demonstrates that Brown pursued a direct appeal as well as a PCRA action which provided him with a full and fair opportunity to litigate any Fourth Amendment claims in state court. The state courts concluded that the photo array and physical line up were not unduly suggestive or otherwise deficient. Furthermore, the trial court's evidentiary ruling denying a motion to suppress the identifications by Sanders is a question of state evidentiary law, not cognizable under § 2254 as it did not render the trial unfair to the extent that Brown was denied due process.

Accordingly, Brown is not entitled to federal habeas corpus relief with respect to any claims (Ground Two (1)) regarding the use of identification evidence against him which was obtained as the result of an alleged unconstitutional photo array.

### C.   Autopsy Photos

It is undisputed that the trial court allowed the Commonwealth to introduce two black and white autopsy photographs.  Brown describes the photos as being a close up of a gunshot wound to the back of the victim's head and a photo of a gunshot wound to the victim's upper back.  See Doc. 35, p. 74.  Petitioner contends that permitting the introduction of those photos was improper since the cause of death was undisputed.[10]

As noted above, federal habeas corpus review is generally not available to adjudge the correctness of a state court evidentiary ruling such as the admission of photographic evidence.  Moreover, evidence is excluded only if its prejudicial effect substantially outweighs its probative value.  Perryman v. H & R Trucking, 135 Fed. Appx. 538, 541-42 (3d Cir. 2005).  This well settled evidentiary principle "implements a presumption in favor of admissibility."  See id. at 542.  It is also well recognized that a trial judge is in the best position to render a determination as to potential prejudicial effect.  Pennsylvania state law similarly recognizes that admission of photographs is a matter within the trial court's sound discretion and only an abuse of discretion constitutes reversible error.  Commonwealth v. Auker,

---

[10]   In his traverse, Petitioner admits that the trial court limited the number of photos which could be introduced and also indicated that they had to be in black and white format.  See Doc. 25, p. 5.

681 A.2d 1305, 1318 (Pa. 1996).

The Superior Court in addressing this issue, noted that the evidence at issue consisted of two "rather clinical" black and white autopsy photographs . Doc. 11-2, p. 188.  The Court added that the photographs did not show the victim's face, any blood, or any large wounds.  While they did show some small discolorations, the Superior Court concluded that there was little risk that the jury's passions would have been inflamed as to constitute unfair prejudice and that at most the decision to allow the photographs was harmless error.  See id. at p. 189.

Based upon the undisputed description of the two photos, this Court agrees that their admission was neither unfairly prejudicial nor inflammatory and an arguably proper exercise of discretion by the state trial court.  The state courts' conclusion that admission of the autopsy photos did not undermine the truth determining process to the extent that a reasonable adjudication of guilt or innocence did not occur was not an unreasonable application of Supreme Court principles.  Accordingly, this Court agrees that the admission of the two photos at most constituted harmless error.

Moreover, there has been no sufficient showing that the outcome of the proceedings would have been different if the photos were disallowed and as such their introduction does not warrant federal habeas corpus relief.  Habeas corpus

relief will also be denied with respect to Ground Two (2).

### D.   Summerbell's Testimony

As previously discussed, Sanders identified Brown as the individual whom he saw running from the area. Along with the Petitioner and other individuals, Summerbell participated in a physical lineup which was conducted on June 9, 2007 at the York County Prison.  The Commonwealth presented trial testimony by Summerbell that before the lineup began Petitioner encouraged Summerbell to wear Brown's eyeglasses in an attempt to confuse Sanders, the eyewitness.

Petitioner contends that the trial court erred by denying his motion in limine which sought to exclude Summerbell's testimony and by not excluding, as hearsay testimony that another person present at the physical lineup remarked that Summerbell resembled the defendant when wearing the glasses. (Ground Two (3 & 5)).

It is again noted that federal habeas corpus review is generally not available to adjudge the correctness of a state court evidentiary ruling such as the admission of testimony.  Furthermore, consciousness of guilt may be inferred under Pennsylvania state law when a criminal defendant deliberately alters his appearance in order to avoid identification.  Based on an application of those factors, the decision by the trial court to allow testimony that Brown attempted to

avoid being selected in the physical lineup by having another participant wear his eyeglasses was properly admitted consciousness of guilt evidence under Pennsylvania state law and did not violate clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against them."  The Confrontation Clause is applicable to the States through the Fourteenth Amendment.  See Monachelli v. Warden, SCI-Graterford, 884  F.2d  749, 751 (3d Cir. 1989)(citing Pointer v. Texas, 380 U.S. 400, 404 (1965)).  It does not guarantee criminal defendants 'the *absolute* right to a face-to-face meeting with witnesses against them at trial."  Maryland v. Craig, 497  U.S. 836, 844  (1990). The Clause's "central concern . . . is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  Id. at 845.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." United States v. Linwood, 142 F.3d 418, 424-25  (7th Cir. 1998).  When the prosecution seeks to introduce an unavailable declarant's out-of-court statement against an accused, courts must decide whether the offered statement is permissible under the Confrontation Clause.  Lilly v. Virginia, 527 U.S. 116, 123-24 (1999).

19

In <u>Lilly</u>, the Court recognized that testimony admitted pursuant to "a firmly rooted hearsay exception" did not violate the Confrontation Clause. <u>Id</u>. at 124.

Under Pennsylvania state law, "a witness may testify to statements made by another to the witness or to a third person when the purpose of this testimony is to evidence the effect the statement had upon the listener." <u>Commonwealth v. Wright</u>, 317 A..2d  271, 273 (Pa. 1974); <u>see</u> <u>also</u> <u>Commonwealth v. Smith</u>, 492 A.2d  9, 13 (Pa. Super. 1985) (statement made to or overheard by a witness is admissible when the purpose of the testimony is to evidence the effect which the statement had upon the listener).  A determination as to whether a challenged statement is inadmissible hearsay "turns on the purpose for which it is offered." <u>United States v. Sallins</u>, 993 F.2d 344, 346 (3d Cir. 1993).  Testimony offered for the purpose of showing its effect on the listener is a non-hearsay use and therefore admissible.  <u>United States v. Lambinus</u>, 747 F.2d 592, 597 (10th Cir. 1984) (testimony offered for its effect on the listener is a non-hearsay use).

 In the instant case, the challenged hearsay was not offered to prove the truth of the matter asserted (that Summerbell resembled Brown when wearing the eyeglasses) but rather to show the effect it had on Petitioner.  Specifically, it was admitted to establish that it prompted Petitioner's attempt to avoid identification by having Summerbell wear the eyeglasses during the lineup.  Since the testimony by

Summerbell as to the resemblance remarks falls under one of the well settled exceptions to the hearsay rule, its admission did not implicate Sixth Amendment confrontation rights.  Denial of relief with respect to Ground Two (3) and (5) is appropriate.

### E.    Jury Instruction

In a related claim, Petitioner contends that the jury was improperly given an instruction on consciousness of guilt pertaining to Summerbell's testimony (Ground Two (4)).  Federal habeas corpus relief may issue only if the court finds that an error in the jury charge "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  In Burger v. Kemp, 483 U.S. 776, 782 n.5 (1987), the Court ruled that jury instructions that may have erroneously shifted the burden of proof on criminal intent to commit murder did not warrant habeas corpus relief where "'the evidence was so dispositive of intent' that it can be said beyond a reasonable doubt that 'the jury would have found it unnecessary to rely on the presumption.'"

Propriety of jury instructions is to be determined by assessing the entire set of instructions.  See  Victor v. Nebraska, 511 U.S. 1, 5 (1994); United States v. Issac, 134 F.3d 199, 203 (3d Cir. 1998). The primary point of inquiry is "whether, viewed in light of the evidence, the charge as a whole fairly and adequately

submits the issues in the case to the jury, and [we] reverse only if the instruction was capable of confusing and thereby misleading the jury." Bennis v. Gable, 823 F.2d 723, 727 (3d Cir. 1987) (internal quotations omitted); United States v. Zehrbach, 47 F.3d 1252, 1264, (3d Cir. 1995).

Given this Court's determination that testimony by Summerbell showing consciousness of guilt by the Petitioner was admissible, it was clearly appropriate for the trial court to provide a consciousness of guilt jury instruction. Moreover, there is no indication that this was a case where the challenged jury instruction misled or caused confusion with the jurors. Relief will also be denied with respect to this argument.

## III.   Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994). In Deputy, the Third Circuit also noted that it was not bound by any state court determinations as to a counsel's performance. Id. at 1494.

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Jermyn, 266 F.3d at 282; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992) "Without proof

of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell, 535 U.S. at 695 (internal quotations and citation omitted).[11]

At the time of Petitioner's state court proceedings, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  In addressing Brown's present ineffective assistance claims, the state courts applied essentially the same two-prong test for ineffective assistance articulated in Strickland.

Specifically, under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test.  See, e.g., Commonwealth v. Pierce, 527 A.2d 973, 975-77 (Pa. 1987).  The Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland.  Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).  Thus, it cannot be said that the state courts applied rules contrary to prevailing principles established by the United States Supreme Court for the

---

[11]  A court may choose to address the prejudice prong first and reject an ineffective assistance claim solely on the basis that the defendant was not prejudiced. See Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

adjudication of ineffective assistance claims.

Accordingly, under § 2254(d)(1), the relevant inquiry in addressing the pending ineffectiveness claims is whether the Pennsylvania state courts' decisions involved an unreasonable application of Strickland or were based on an unreasonable determination of the facts. Jacobs, 395 F.3d at 107 n.9; Werts, 228 F.3d at 204.

Petitioner asserts that his trial counsel was ineffective for failing to present expert testimony to rebut the Commonwealth's expert witness who linked Petitioner to the crime on the basis of gunshot residue. His second ineffective assistance argument contends that trial counsel erred by not requesting a mistrial after it was brought to the his attention that the trial court judge had contact with a juror at the YMCA during a lunch recess.

Petitioner's third ineffective assistance claim maintains that trial counsel's performance was deficient for not challenging the trial court's determination that the defense was not entitled to the names of 30-35 persons who had been identified to law enforcement officials by the victim in conjunction with his work as a confidential informant and who as such had potential motive to harm the victim.

### A.    Rebuttal Witness

It is undisputed that the Commonwealth presented expert testimony

regarding gunshot residue.  Petitioner acknowledges that the Commonwealth expert indicated that traces of gunshot residue were "located on Petitioner's hands, his clothing, and vehicle."  Doc.  25, p. 34.   The expert also prepared a written report which was provided to the defense.  See. id.  Brown's trial counsel conducted a cross examination of that witness.  Petitioner argues that his defense attorney's performance was deficient due to the failure to call Dr. Saferstein, a rebuttal gunshot residue expert who had been retained by trial counsel to review the Commonwealth's expert's report, prepare a report,  and appear as a defense witness.

Trial counsel gave PCRA testimony that the Commonwealth's gunshot residue expert admitted curing cross examination  that his  expert report contained many inconclusive results and that gunshot residue could be present even if one had not fired a gun.  Trial counsel also expressed that the Commonwealth's expert testified to many of the same matters that he hoped would be established by the rebuttal witness' testimony.  Moreover, trial counsel was concerned that if he called Dr. Saferstein, the Commonwealth's expert could be recalled and thereby given an opportunity to clear up any confusing parts of his prior testimony.

Petitioner's traverse concedes that trial counsel's cross examination was able to demonstrate that approximately 80% of the Commonwealth's expert's findings

were inconclusive.  See Doc. 25, p. 35.  Based upon the undisputed record, it is apparent to this Court  the determination not to call Dr. Saferstein as a rebuttal witness was a reasonably sound tactical decision given that there was effective cross examination of the Commonwealth expert.  Accordingly, there is no basis for a finding of ineffective assistance.

**B.**   **Mistrial**

Brown next contends that trial counsel erred by not seeking a mistrial when it was brought to his attention that the trial court judge had contact with a juror at the local YMCA during a lunch recess.  Petitioner concedes that "no evidence of the contact appears in the trial record."  Doc. 35, p. 47.  However, Petitioner contends that his trial counsel and the trial judge both acknowledged that contact had taken place.  Moreover, it is undisputed that trial counsel discussed the incident with his client and informed him that the incident did not raise any flags or concerns which would warrant seeking a mistrial or even asking that a cautionary instruction be provided to the jury.

It is apparent that any contact between the judge and juror was nothing more that a brief unintentional encounter.  There is clearly no indication whatsoever that the trial judge discussed any aspect of Petitioner's ongoing criminal case with any member of the jury outside of the courtroom.

Since there is no basis for a determination that the a contact between the trial court judge and a juror was improper to the extent that it resulted in a reasonable likelihood of prejudice of the defendant's right to a fair trial in any manner, the decision by trial counsel not to seek a mistrial or request a cautionary jury instruction was a reasonable determination and insufficient to support a claim of ineffective assistance.

### C.   Disclosure of information

It is undisputed that the victim, Lamont Nelson, had been a confidential informant for area law enforcement agencies.  More importantly, Nelson was to be a witness against Petitioner in a pending drug related criminal prosecution. Brown's trial counsel filed a pre-trial motion requesting to be provided with the names of any persons "that Mr. Nelson worked for the police against."  Doc. 35, p. 55.  The motion was denied to the extent that it sought specific information regarding individuals and trial counsel was limited to presenting evidence showing that Nelson was a confidential informant and the number and general nature of cases in which the victim was a participant.

The final argument for relief maintains that trial counsel erred by not challenging on direct appeal the trial court's decision preventing disclosure of the specific names of individuals related to the victim's work as a confidential

informant.

As discussed above, trial counsel filed an unsuccessful pre-trial motion to compel disclosure of the specific names.  However, counsel was nonetheless able to elicit trial testimony establishing that the victim was a confidential informant in at least thirty (30) cases.  By presenting that information, trial counsel was able to show the members of the jury that other individuals also  had motive to kill the victim.

Since trial counsel was able to establish that there were a large number of individuals who also arguably had motive to murder the victim, the failure to provide specific identities of certain persons does not warrant the conclusion that the trial may have had a different outcome if the specific names had been provided.

Despite the denial of trial counsel's pre-trial motion, he was still able to show the jury that multiple other persons had motive to commit the crime.  As a result, there is no basis for a claim of ineffective assistance for failing to pursue the denial of the pre-trial motion on direct appeal.  This determination is further bolstered by the fact that when the issue was raised by Petitioner in his PCRA proceeding it was rejected by the Pennsylvania state courts.

### IV.   <u>Conclusion</u>

In conclusion, and for the reasons set forth above, the petition for writ of

habeas corpus will be denied.  An appropriate Order will enter.


                        BY THE COURT:


                          s/   Matthew W. Brann
                        Matthew W. Brann
                        United States District Judge